UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| ARIS LIZARDOS, *et al.*, <br><br>                              Plaintiffs, <br><br> -v- <br><br> COMMUNITY ALTERNATIVE <br> SYSTEMS AGENCY (CASA), *et al.*, <br>                              Defendants. |

25-CV-5449 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

*Pro se* plaintiffs Aris Lizardos, Darren Dione Aquino, and Louis Lizardos (collectively, "Plaintiffs") filed the present action seeking emergency declaratory and injunctive relief as well as damages and an investigative referral.  Plaintiffs' Complaint names as defendants Community Alternative Systems Agency, Brenda Jacobs, New York Independent Assessor Program, Maximus Health Services, Inc., Office for People with Developmental Disabilities, Cornell Hospital, New York State Department of Health, New York State Medicaid Office, Governor Kathy Hochul, Mary Manning Walsh Nursing Home, and Jane and John Doe(s) (collectively, "Defendants").

For the reasons stated below, Plaintiffs' request for emergency relief is denied, and this action is dismissed for lack of subject matter jurisdiction.

I.      **Background**

A.      **Factual Background**

The following facts are drawn from Plaintiffs' Complaint (ECF No. 1 ("Compl.")), and from the Court's telephone conference held with Plaintiffs Darren Dione Aquino ("Aquino") and Louis Lizardos ("L. Lizardos") on July 25, 2025 (ECF No. 10 ("Conf.")).

1

Aris Lizardos ("Lizardos") suffers from severe limitations that make him "especially vulnerable to exploitation" and "at risk of serious harm." (Compl. at 3.) Aquino, founder and CEO of Advocates for Disabled Americans, Veterans, Police, Firemen & Families, is a "federally appointed advocate" who, according to the Complaint, is authorized to make medical decisions for Lizardos. (*Id*. at 10.) Lizardos's brother, L. Lizardos, although "loving, and caring of [Lizardos's] needs," "has limited legal standing comparable to that of" Aquino. (*Id.* at 10-11.)

Plaintiffs sought relief from the decision of a state administrative law judge ("ALJ") for what Plaintiffs allege was the improper termination of Lizardos's in-home health services. On July 2, 2025, the ALJ issued an order ("ALJ Order) in which it found that the New York Social Services Agency ("the Agency") had discontinued Lizardos's Consumer Directed Personal Assistance Program services without proper notice. (Conf. at 4:5-6.) The ALJ then ordered the Agency to find a Medicaid-approved service provider from the Community Alternative Systems Agency ("CASA")[1] that would provide Lizardos twenty-four-hour care in his home. (*Id.* at 4:6-9.) Although Plaintiffs are unclear about the timing, at some point either before or after the ALJ Order, Lizardos went to the hospital, "[a]nd then he became very ill, got sick in the facility because of the lack of care there, that he went into a coma." (*Id.* at 6:2-4.) Plaintiffs allege that if the Agency and CASA had provided the services that Lizardos was entitled to, he would not have suffered these injuries. (*Id.* at 6:21-24.)

Moreover, Plaintiffs state that, to date, Lizardos is still not receiving his services as ordered by the ALJ. (*Id*. ("CASA, even though they were directed to do it, didn't send the aide. There is no aide in the house.").) The continued failure to provide services, according to Plaintiffs, violates the Americans with Disabilities Act (the "ADA"). (*Id.* at 9:8-12 ("The ADA

---

[1] CASA serves as "a broker that sends in [home health] aides." (Conf. at 19:9.)

violation is, these services were granted but [CASA] didn't provide them.  So denying [Lizardos] access to his treatment and services is a Title 2, 1, 3 and 504 [violation] of the ADA.  And the state issue, in their official capacity under color of law, they did not protect him.").)

B.    **Procedural Background**

At the July 25, 2025 conference, the Court ordered Plaintiffs to place on the docket the ALJ Order and any other materials relevant to the appointment of a guardian ad litem for Lizardos.  (Conf. Call at 20:25; 21:1-4).)  The Court permitted Plaintiffs to send any materials that included Lizardos's personal medical information directly to the Court.  (*Id.*)  Plaintiffs emailed to the Court the requested materials later that day.

On October 3, 2025, the Court ordered Plaintiffs to file a status letter by October 10, 2025, apprising the Court of the current status of the case.  (ECF No. 9.)  Plaintiffs failed to do so.  On October 20, 2025, the Court informed Plaintiffs that they must file a letter by November 7, 2025, indicating whether they intended to proceed with this case and providing the Court with a status of the facts alleged in the Complaint, or the action would be immediately dismissed for lack of prosecution.  (ECF No. 12.)

On October 31, 2025, Aquino emailed the Court indicating that Plaintiffs intend to continue prosecuting the case and stating that this Court's inaction constitutes "a denial of justice to a disabled litigant and violates core due-process access obligations."  The email included a section entitled "Relief Requested" under which Plaintiffs request "[i]nvestigation and corrective guidance to ensure disabled litigants receive timely action on counsel/accommodation requests and are not placed at risk of losing their rights due to incapacity."

Before this Court can address Plaintiffs' requested relief, it must first determine whether it has subject matter jurisdiction to adjudicate Plaintiffs' claims.

## II.     Subject Matter Jurisdiction

"Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction. *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court *sua sponte. Id.* at 700. "If subject matter jurisdiction is lacking, the action must be dismissed." *Id.* at 700-01; *see also* Fed. R. Civ. P. 12(h)(3).

The basic statutory grants of subject matter jurisdiction are set forth in 28 U.S.C. §§ 1331 and 1332. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). Section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1332 provides that federal district court subject matter jurisdiction may be established where there is a diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000. 28 U.S.C. § 1332. Although courts hold *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotation marks omitted), *pro se* litigants must establish subject matter jurisdiction, *see, e.g., Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541, 542-43 (E.D.N.Y. 1999). Because the question of subject matter jurisdiction implicates judicial power to adjudicate the dispute, courts may consider extrinsic evidence outside the pleadings to determine whether subject matter jurisdiction exists. *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *Luckett*

4

*v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).  Here, then, this Court can consider statements made by the Plaintiffs at the July 25, 2025 conference.

Applying the rules regarding federal district court subject matter jurisdiction to this case, the Court concludes that it lacks subject matter jurisdiction to adjudicate Plaintiffs' claims. Plaintiffs' claims appear to arise from the failure of CASA and the Agency to reinstate Lizardos's round-the-clock care as they were directed to do in the ALJ Order.  This Court, however, does not have jurisdiction to enforce the ALJ Order.  *See Doe v. Pfrommer*, 148 F.3d 73, 81 (2d Cir. 1998) (concluding that when the ALJ previously rules that a plaintiff was improperly denied his or her rights, enforcement of that decision must proceed in state court).  In *Doe v. Pfrommer*, the Second Circuit upheld the district court's refusal to enforce a state ALJ order.  *Id.*  In the district court proceeding, the plaintiff had claimed that the defendants failed to provide him with his services that were afforded to him pursuant to Title I of the Rehabilitation Act.  *See generally Doe v. Pfrommer*, 93-CV-116, 1197 WL 141683 (N.D.N.Y. Mar. 19, 1997). The district court determined that the "issue was clearly addressed . . . in Plaintiff's administrative proceeding" and was "decided in Plaintiff's favor." *Id*. at *6.  Therefore, the district court concluded, the plaintiff was not "aggrieved" by the ALJ's decision, and therefore there was no jurisdictional basis for bringing the issue to federal court.  *Id.*  Rather, the district court held that "[e]nforcement of [the ALJ's] administrative decision . . . clearly lies in state court." *Id*.  The instant case presents facts that are nearly identical to those in *Pfrommer*, as Plaintiffs here were not aggrieved by the ALJ Order.  Instead, the ALJ here, as in *Pfrommer*, decided in Lizardos's favor.  Accordingly, any requested enforcement of the ALJ Order must proceed in state court and not this Court.

When asked the basis for this Court's subject matter jurisdiction, Plaintiffs Aquino and L. Lizardos cited only the ADA. (*See* Conf. Call at 8:1-3 ("Medicaid dropped the ball, and under the ADA, the state, under color of law, violated [Lizardos's] protection and services").) The ADA, however, is inapplicable to this dispute. The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability. . . be subjected to discrimination. 42 U.S.C. § 12132; *Shine v. New York City Hous. Auth.*, No. 19-CV-04347, 2020 WL 5604048, at *2 (S.D.N.Y. 2020).

The purpose of the ADA is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe*, 148 F.3d at 82. Thus, in keeping with the purpose of the ADA, the Second Circuit has repeatedly held that a plaintiff may not challenge the adequacy of services provided exclusively to the disabled under the ADA. For example, in *Pfrommer*, the Second Circuit panel noted that "where the handicapping condition is related to the benefit provided, it will rarely, if ever, be possible to say with certainty that a particular decision was 'discriminatory.'" 148 F.3d. at 83 (quoting *United States v. Univ. Hosp., State Univ. of New York at Stony Brook*, 729 F.2d 144, 157 (2d Cir. 1984)). Therefore, Plaintiffs' allegations that Lizardos did not receive the disability services granted to him by the ALJ Order do not state a claim under the ADA, as those benefits were directly related to Lizardos's "handicapping condition," and thus the denial of those benefits cannot be said to be "discriminatory." *Pfrommer*, 148 F.3d at 83.

Moreover, courts have held that a challenge to the adequacy of services provided to a disabled person is not a valid claim under the ADA. *See Cercpac v. Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1988) (concluding that the denial of medical or mental health care alone does not state a cognizable claim under the ADA, as the ADA "do[es] not guarantee any

particular level of medical care for disabled persons, nor assure maintenance of service previously provided"); *Maccharulo v. New York State Dep't of Corr. Servs.*, No. 08-CV-301, 2010 WL 2899751, at *4 (S.D.N.Y. July 21, 2010). Thus, Plaintiffs' allegation that Lizardos received inadequate care once hospitalized also does not amount to an ADA violation.

Ultimately, then, given that this Court does not have jurisdiction to enforce the state ALJ Order, that this dispute does not arise under federal law, and that Plaintiffs do not allege diversity jurisdiction, this Court does not have jurisdiction to address the merits.

## III.    Leave to Amend

In light of the pleading deficiencies set forth above, the Court has considered whether Plaintiffs should be given an opportunity to re-plead. Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "This relaxed standard applies with particular force to *pro se* litigants." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999). The Second Circuit has emphasized that a "court should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); s*ee also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

7

Here, the lack of subject matter jurisdiction cannot be remedied by amendment.

Accordingly, the Court declines to grant Plaintiffs leave to file an amended complaint.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' Complaint is dismissed without prejudice pursuant

to Federal Rule of Civil Procedure 12(h)(3).

The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: January 6, 2026
       New York, New York

_____
          J. PAUL OETKEN
       United States District Judge

8